UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-00009-MOC
(3:16-cr-00233-MOC-DCK-1)

| | |
|---|---|
| JAMES SCOTT ERVIN, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on the following:

(1) Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 1];[1]

(2) Petitioner's letters requesting documents [CV Docs. 2, 3];

(3) Petitioner's Motion for Transcripts [CV Doc. 9];

(4) Petitioner's "Motions To Supplement Pending § 2255 Due To Newly Discovered Evidence & Vacate Sentence & Conviction Pursuant To New Evidence" [Doc. 10] and the Addendum thereto [Doc. 11], which the Court construes as a motion to amend;

(5) Petitioner's Motion for Evidentiary Hearing [Doc. 12];

(6) Petitioner's Motion to Amend [Doc. 13]; and

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:20-cv-00009-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:16-cr-00233-MOC-DCK-1.

(7) Petitioner's Motion to Compel Discovery [Doc. 14].

## I. BACKGROUND

In May 2016, after getting into an argument with several men, Petitioner James Scott Ervin, Jr., ("Petitioner") went to his girlfriend's[2] house, retrieved a Ruger, model AR556, 5.56 caliber, semi-automatic rifle, and fired at the men. [CR Doc. 30 at ¶¶ 5-6: Presentence Investigation Report (PSR)]. Police responded to a 911 call regarding someone walking up and down the street with a rifle. [Id. at ¶ 5]. When the officers arrived, they saw Petitioner holding the rifle. It had a 30-round magazine and was loaded with 24 rounds of ammunition. [Id.]. Petitioner then walked to this girlfriend's house and left the rifle there. [Id.].

Officer recovered the rifle from Petitioner's girlfriend's house after obtaining consent for a search. [Id. at ¶ 6]. After officers Mirandized Petitioner, he admitted that he possessed his girlfriend's rifle, that he had retrieved the rifle from her house and shot at the victims, and then returned the rifle back to the house. [Id. at ¶ 7].

Petitioner was charged in a Bill of Indictment with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e). [CR Doc. 1: Bill of Indictment]. The Indictment read as follows:

> On or about May 28, 2016, in Mecklenburg County, within the Western District of North Carolina, [Petitioner], having been previously convicted of at least one crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a firearm, that is, a Ruger, model AR556, 5.56 caliber, semi-automatic rifle, in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).

---

[2] The record also refers to Petitioner's girlfriend as his wife. For the sake of consistency, the Court will refer to her as his girlfriend.

[Id. at 1]. Petitioner agreed to plead guilty without a written plea agreement. [CR Doc. 16 at ¶¶ 3, 25: Acceptance and Entry of Guilty Plea]. Petitioner's plea hearing was held on March 16, 2017. At the hearing, Petitioner agreed that there was a factual basis for his guilty plea and that he had read it, understood, and agreed with it.³ [Id. at ¶¶ 26, 27; CR Doc. 40 at 10: Plea Hearing Tr.]. The Court reviewed the penalty for conviction under 18 U.S.C. § 922(g)(1), including the usual 10-year maximum sentence and the 15-year minimum sentence if Petitioner were found to be an armed career criminal.⁴ [CR Doc. 40 at 4]. Petitioner affirmed that he fully understood the charge against him, including the possible penalties on conviction. [Id.]. Petitioner's counsel noted at the plea hearing that, "[t]he issue is whether or not he's ACCA and that can't be determined – there's a case pending before the Fourth Circuit."⁵ [Id. at 6].

Petitioner further testified that he had spoken with his attorney about how the Sentencing Guidelines might apply to his case and that the District Judge would not be able to determine the applicable guidelines range until after Petitioner's Presentence Investigation Report (PSR) was prepared and Petitioner had the opportunity to comment on it. [Id. at 5; CR Doc. 16 at ¶¶ 13-14]. Petitioner acknowledged that he understood that if the sentence imposed were more severe than Petitioner expected, Petitioner would remain bound by his plea and have no right to withdraw. [Id. at 8; CR Doc. 16 at ¶ 17]. Petitioner confirmed that he was, in fact, guilty of the charge to which

---

³ At the time of the plea hearing, the Government had filed an Amended Factual basis noting Petitioner's objection to the paragraph recounting Petitioner's admissions during the Mirandized interview with law enforcement. [CR Doc. 15 at 2 n.1].

⁴ The Armed Career Criminal Act (ACCA) mandates a 15-year minimum sentence (and a maximum of life in prison) for a felon who has "three previous convictions … for a violent felony or a for a serious drug offense." 18 U.S.C. § 924(e)(1). Without armed career criminal status, the mandatory maximum penalty for violation of § 922(g) is ten years. 18 U.S.C. § 924(a)(2).

⁵ Petitioner was referring to the Burns-Johnson case, which was pending before the Fourth Circuit at the time of Petitioner's plea. In Burns-Johnson, on July 18, 2017, the Fourth Circuit held that robbery with a dangerous weapon under N.C.G.S. § 14-87 categorically qualifies as a violent felony under the ACCA.

3

he was pleading guilty. [Id. at 10; CR Doc. 16 at ¶ 24]. The Magistrate Judge found that Petitioner's guilty plea was "knowingly and voluntarily made" and found a factual basis to support the plea. [Id. at 12; CR Doc. 16 at p. 5]. The Magistrate Judge then accepted Petitioner's guilty plea. [Id.].

Petitioner's sentencing was set for November 13, 2017, well after Burns-Johnson was decided. [10/20/2017 Docket Entry; see CR Doc. 41: Sentencing Tr.]. Before Petitioner's sentencing, a probation officer prepared a PSR. [CR Doc. 30]. The probation officer determined that Petitioner was an armed career criminal because he had at least three prior convictions for violent felonies that were committed on different occasions, citing his four prior convictions for robbery with a dangerous weapon in North Carolina and his conviction for assault with a deadly weapon with intent to kill.[6] [Id. at ¶ 23]. The probation officer recommended a Total Offense Level (TOL) of 31, which included an ACCA enhancement, and a criminal history category of VI, which also accounted for Petitioner's armed career criminal status. [Id. at ¶¶ 23, 26, 57]. The recommended guidelines range for a TOL of 31 and criminal history category of VI was a term of imprisonment of 188 to 235 months. [Id. at ¶ 123]. The statutory mandatory minimum sentence was 15 years, and the maximum term was life. [Id. at ¶ 122 (citing 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e)(1))]. Petitioner objected to the PSR, arguing that he should not be considered an armed career criminal because his four prior convictions for robbery with a dangerous weapon were not violent felonies in light of the invalidation of § 924(e)'s residual clause in Johnson v. United States, 135 S. Ct. 2551 (2015). [CR Doc. 25].

At sentencing, the Court rejected Petitioner's ACCA argument, finding that Petitioner's predicate convictions fell easily within the ACCA statute. [CR Doc. 41 at 9: Sentencing Tr.].

---

[6] Petitioner's criminal record was extensive and included several convictions for which his sentence exceeded a year in prison. [See CR Doc. 30 at ¶¶ 37, 39, 40, 41, 42, 51].

4

Petitioner argued for a downward variance to the statutory minimum of 15 years. [Id. at 11]. The Government opposed a downward variance and asked for a low-end guidelines sentence of 188 months. [Id. at 12]. After considering and weighing the Section 3553(a) sentencing factors, the Court sentenced Petitioner to a term of imprisonment of 188 months. [Id. at 18-19].

Petitioner appealed his sentence. United States v. Ervin, 729 Fed. App'x 268 (4th Cir. 2018). Petitioner argued that his sentence was procedurally unreasonable because the district court did not adequately address his nonfrivolous arguments for a lower sentence.[7] Id. at 269. The Fourth Circuit affirmed this Court's judgment, finding that "the district court 'conduct[ed] an individualized assessment of the facts and arguments presented' … and that the sentence is free of procedural error." Id. (quoting United States v. Blue, 877 F.3d 513, 518-19 (4th Cir. 2017)). On March 25, 2019, the Supreme Court denied Petitioner's petition for writ of certiorari. Ervin v. United States, 139 S. Ct. 1392 (2019).

On January 7, 2020, Petitioner timely filed the instant motion to vacate under § 2255. [CV Doc. 1]. As grounds for his § 2255 motion, Petitioner asserts three general grounds for relief: (1) ineffective assistance of counsel and that his guilty plea was unconstitutional due to counsel's ineffective assistance; (2) his conviction was invalid in light of Rehaif v. United States, 139 S. Ct. 2191 (2012)[8]; and (3) he was actually innocent of being a felon in possession of a firearm. [CV Doc. 1 at 5-18]. Plaintiff's asserts a laundry list of reasons he believes he received ineffective assistance of counsel. [See id. at 5-12]. These include (1) his attorney's failure to investigate the

---

[7] Petitioner also challenged his designation as an armed career criminal, but conceded that United States v. Burns-Johnson, 864 F.3d 313, 314 (4th Cir.), cert. denied, 138 S. Ct. 461 (2017), foreclosed this argument. Id. at n.*.

[8] In Rehaif, the Supreme Court "conclude[d] that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.

5

search that uncovered the firearm, Petitioner's statements admitting his conduct, or the origin of the firearm; (2) ineffective assistance of counsel that affected the voluntariness of Petitioner's guilty plea, including the failure to properly advise Petitioner as to the Sentencing Guidelines, the failure to explain the elements of the offense of conviction, the failure to object that the Magistrate Judge did not find a factual basis for Petitioner's offense at the plea hearing, and the failure to properly advise Petitioner regarding a justification defense, including self-defense; and (3) ineffective assistance of counsel at sentencing for failure to move for a downward departure based on self-defense of his family. [CV Doc. 1 at 4-12]. For relief, Petitioner asks for the appointment of counsel, for an evidentiary hearing, and for his criminal judgment to be vacated. [CV Doc. 1 at 22].

Petitioner then filed a request for the Court to produce "ALL information in the case pretaining to the findings by the ATF, the firearm trace summary and, the report of investigation." [CV Doc. 2 (errors uncorrected)], and for the Court to order the production of all the discovery from his original criminal proceeding, [CV Doc. 3].

Petitioner filed a motion to amend, seeking leave to add allegations that he had learned in October 2019 about the firearm trace summary and report of investigation, but that his former counsel had refused to forward either document to him; that, although he had reviewed the discovery prior to his guilty plea, he was not "permitted adequate time" for review; that counsel failed to review the firearm's origin or discovery that it was made in North Carolina; and that counsel miscalculated Petitioner's sentencing exposure and "coaxed" him to plead guilty based on the Burns-Johnson brief, referencing handwritten notations regarding a non-ACCA calculation on the cover of an appellate brief in the Burns-Johnson case. [CV Doc. 5 at 3-5; CV Doc. 5-2]. Petitioner also argued that appellate counsel was ineffective for failing to investigate the origin of

6

the firearm and not arguing, as Petitioner requested, that Burns-Johnson was wrongly decided, and for not filing an Anders brief. [Id. at 5-8]. The Court granted Petitioner's motion to amend. [CV Doc. 6].

The Government then moved to stay the proceedings pending resolution of the Government's petition for rehearing en banc in United States v. Gary, 954 F.3d 194 (4th Cir. 2020). See Gary, No. 18-4578 (4th Cir. May 8, 2020). The Court stayed the matter until Gary was reversed sub nominee in Greer v. United States, 141 S. Ct. 2090 (2021). [Doc. 8]. In the meantime, in June 2020, Petitioner filed a motion for transcripts at the Government's expense, noting the Court had denied a prior motion seeking the same relief. [CV Doc. 9; see CR Doc. 47]. In August 2020, Petitioner filed a second motion to amend, attaching the report of investigation he previously sought and other documents. [CV Doc. 10]. Petitioner argues that the ATF agent's opinion that the firearm was not manufactured in North Carolina was "false." [Id. at 3]. Petitioner asserted for the first time that the Court lacked jurisdiction to sentence him under § 922(g) because the firearm was not manufactured out-of-state. [Id. at 4]. More than two weeks later, Petitioner filed an "addendum" to his second motion to amend. It included a firearm warranty card listing a Ruger company address in North Carolina.[9] [CV Docs. 11, 11-1].

On September 21, 2020, Petitioner filed a motion for an evidentiary hearing regarding the interstate nexus element of his offense and related claims of ineffective assistance of counsel. [CV Doc. 12]. Then, over three months later, Petitioner filed a third motion to amend. This time

---

[9] In relevant part, Plaintiff's evidence shows that, in the original Report of Investigation, the ATF Special Agent errantly opined that the firearm "was not manufactured in the State of North Carolina and therefore has traveled in/or affected interstate and/or foreign commerce." [Doc. 10 at 8]. Petitioner's evidence supports that the subject firearm was, in fact, manufactured in Mayodan, North Carolina. [Id. at 10-11; CV Docs. 11-1, 11-2]. The record reveals, [CV Doc. 18-1], and the Government concedes, [CV Doc. 18 at 8, 13], that the subject firearm was manufactured in North Carolina. The Court, therefore, proceeds from that conclusion.

7

Petitioner argues that his attorney was ineffective for failing to challenge the factual basis for his guilty plea or the evidence of interstate nexus because the firearm was never physically examined and that the Court failed to ensure Petitioner understood the elements of the offense to which he pleaded guilty. [CV Doc. 13 at 2, 4, 6-8]. Petitioner also filed another motion to compel discovery, again seeking a firearm trace summary. [CV Doc. 14].

On July 15, 2021, the Court lifted the stay after the Supreme Court decided <u>Greer</u>. [CV Doc. 17; <u>see</u> CV Doc. 15]. The Government timely responded to Petitioner's § 2255 motion to vacate, [CV Doc. 18], and the Court notified Petitioner of his right to reply, [CV Doc. 19]. Petitioner timely replied. [CV Doc. 20]. In his reply, in addition to reiterating his previous arguments, Petitioner argues for the first time that the Indictment was "based on incorrect statements contained in the [ATF] report." [<u>Id.</u> at 5].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. <u>See</u> <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Interstate Nexus Requirement

Under 18 U.S.C. § 922(g), it is illegal for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "ship or transport in

8

Case 3:20-cv-00009-MOC   Document 21   Filed 10/29/21   Page 8 of 20

interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

Petitioner claims that, because the Ruger firearm he was convicted of possessing was manufactured in North Carolina, it did not travel in interstate commerce and Petitioner, therefore, was actually innocent under § 922(g). Petitioner's challenges to his conviction and to the performance of his counsel are tied in large part to this contention. Petitioner's analysis of the nexus requirement, however, is incomplete.

The record shows and the Government concedes that the firearm was assembled in Mayodan, North Carolina, at Ruger's production facility, as argued by Petitioner. The record also shows, however, that the firearm was then transferred to Lipsey's LLC, a Federal Firearms Licensee, in Baton Rouge, Louisiana. [CV Doc. 18-1]. At some point, the firearm made its way back to North Carolina. As such, regardless of its origin in North Carolina, the firearm was shipped and/or transported in interstate commerce, at least to Louisiana and back, and, thus, Petitioner was prohibited from possessing it under § 922(g)(1). Petitioner, therefore, was not actually innocent of being a felon-in-possession of a firearm and his claims that rely on this premise, including his claim that "fundamental fairness" demands that his conviction be vacated and that the Court lacked jurisdiction to sentence him under § 922(g), are without merit and will be dismissed. With this established, the Court turns to Petitioner's other claims.

B. **Rehaif**

Citing Rehaif v. United States, 139 S. Ct. 2191 (2019), Petitioner contends that, at the time he pleaded guilty, he was not informed that the prosecution had to prove his "knowledge of being a prohibited person as an essential element of 922(g)" and, because he was not so informed, he

9

"did not in fact knowingly, intelligently and voluntarily admit (plead guilty) to possessing a firearm as a statutorily barred or prohibited individual." [CV Doc. 1 at 13-14]. Petitioner further claims that had he "been apprised of the essential elements of 922(g) he would not have pled guilty and exercised his right to a jury trial." [Id. at 14 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985))]. Petitioner does not claim, however, that he was unaware of his felony status at the time he possessed the subject firearm. [See id.].

Petitioner's Rehaif claim is procedurally barred and without merit. Claims of error that could have been raised before the trial court and on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice or demonstrates that he is actually innocent of the offense. See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 Fed. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). A subsequent change in the law justifies the failure to raise an issue only where the state of the law was such that "the legal basis for the claim was not reasonably available when the matter should have been raised." Id. Futility does not establish cause to excuse procedural default. See Whiteside v. United States, 775 F.3d 180, 185 (4th Cir. 2014) (en banc) (noting the "alleged futility cannot serve as 'cause' for procedural default in the context of collateral review"). To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his *actual* and substantial disadvantage" and were of constitutional dimension. See Frady, 456 U.S. at 170.

To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F. 3d 579, 584 (4th Cir. 2014). Actual

innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." See Mikalajunas, 186 F.3d at 494.

Petitioner did not raise this claim before this Court or on appeal and has not demonstrated cause and prejudice or actual innocence. See Bousley, 523 U.S. at 621-22. In fact, Petitioner does not contend – and the record firmly and unequivocally contravenes – that he was unaware of this felony status at the time he possessed the subject firearm. Furthermore, Petitioner makes no showing that he was substantially disadvantaged by being unaware of the knowledge requirement because he did not allege that he did not know he was a felon. As such, Petitioner's Rehaif claim is procedurally barred.

This claim similarly fails on the merits. As noted, "in felon-in-possession cases after Rehaif, the Government must prove not only that the defendant knew he possessed a firearm, but also that *he knew he was a felon* when he possessed the firearm." Greer v. United States, 141 S. Ct. 2090 (2021) (citing Rehaif, 139 S. Ct. at 2199-2200). "As many courts have recognized and as common sense suggests, individuals who are convicted felons ordinarily know that they are convicted felons." Id. Again, Petitioner here does not contend or show that he was unaware of his felony status when he possessed the firearm. Any such claim would be incredible anyways considering Petitioner's criminal record.

In sum, Petitioner's Rehaif claim is procedurally barred and without merit. It will be dismissed.

### C. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient

11

performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should

dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

### 1. Failure to Investigate

Petitioner has many complaints about his counsel's performance. To start, Petitioner contends that his attorney failed to investigate the search that uncovered the firearm, Petitioner's statements admitting his conduct, and the origin of the firearm Petitioner possessed.

Petitioner argues that he advised his attorney about the "impropriety" of the consensual search of the residence, but he provides no basis on which his attorney would have challenged the search of his girlfriend's residence. Petitioner also contends that his attorney failed to challenge Petitioner's statements to law enforcement officers. Petitioner again provides no basis on which his statements could have been challenged. The conclusory allegations are insufficient to show deficient performance or prejudice. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations).

Petitioner waived these claims by pleading guilty, in any event. See Fields, 956 F.2d at 1294-96. Finally, these claims are meritless even if they had not been waived. Petitioner agreed in the factual basis that the search was consensual and Petitioner's admissions to law enforcement were made after he was Mirandized. See Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (a petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence").

Petitioner's primary argument is that his attorney failed to adequately investigate whether the firearm he possessed met the interstate nexus requirement. Petitioner correctly contends that the firearm was manufactured in North Carolina. He also contends that it was lawfully purchased by his girlfriend in North Carolina. As explained, however, the firearm was sent to Louisiana after it was assembled in North Carolina and thereafter made its way back to North Carolina, meeting the interstate nexus requirement, see United States v. Rahman, 83 F.3d 89, 93 (4th Cir. 1996) (holding the nexus element may be shown by establishing "the firearm had been shipped or transported"), regardless of whether it was lawfully purchased by his girlfriend in North Carolina.[10]

As such, even if Petitioner's counsel were deficient on this issue, there was no prejudice. Petitioner's claims that his attorney failed to investigate will be dismissed.

---

[10] Petitioner also now seems to argue additional prejudice because the interstate nexus element of the § 922(g) charge in the Indictment was based on findings from the original ATF Report, which errantly reported that the subject firearm was not manufactured in North Carolina. [CV Doc. 20 at 5]. Even if timely asserted and shown, this argument does not change the outcome here. The Indictment did not state the specific facts supporting the "in or affecting commerce" element of § 922(g). [See CR Doc. 1]. And any difference between the factual basis for this element of the charge is not a variance fatal to Petitioner's conviction, especially where Petitioner pleaded guilty. See United States v. Miltier, 882 F.3d 81, 93-94 (4th Cir. 2018) (holding variance between factual basis for "effect on interstate commerce" element of receipt of child pornography charge permissible where "the elements of both the offense charged and the offense of conviction [were] identical"); United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013).

14

### 2. Assistance Incident to the Guilty Plea

Petitioner makes several claims of ineffective assistance that he seems to relate to the knowing and voluntary nature of his guilty plea. He asserts that his attorney failed to properly advise Petitioner as to the Sentencing Guidelines, failed to explain the elements of the offense of conviction, failed to object that the Magistrate Judge did not find a factual basis for Petitioner's offense at the plea hearing, failed to advise Petitioner regarding a justification defense, including self-defense. Petitioner also claims, in conclusory fashion, that his guilty plea was not knowingly and voluntarily made, apparently due to these claims of ineffective assistance.

First, Petitioner has not identified any "essential elements" that counsel allegedly failed to explain. Petitioner also does not address why he would have pleaded guilty had such an element been explained. Petitioner does not allege that he did not know that he had been convicted of an offense punishable by more than a year in prison. And, as noted, such an allegation would have been inherently incredible considering Petitioner's criminal history. As such, this claim is dismissed as conclusory and without merit. See Dyess, 730 F.3d at 359-60.

Second, Petitioner's claims that his attorney failed to properly advise him regarding the Sentencing Guidelines, including his claim that his attorney miscalculated the sentencing exposure, are also conclusory and meritless. The record conclusively shows that counsel advised Petitioner that he could be sentenced as an armed career criminal. Moreover, the Court advised Petitioner of the minimum and maximum penalties if Petitioner were found to be an armed career criminal during the plea hearing. This claim will also be dismissed.

Third, Petitioner's claim that his attorney should have objected that the Magistrate Judge did not find a factual basis for his offense during the plea hearing, and that if he had, Petitioner could have contested the facts set forth in the factual basis, is misplaced. The factual basis does

15

not have to be set out when a defendant pleads guilty; rather, a sufficient factual basis must be established when judgment is entered at sentencing.  See Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."); United States v. Dixon, 105 Fed. App'x 450, 451 (4th Cir. 2004).  Petitioner decided to plead guilty and had been informed of the factual basis for his plea.  Petitioner affirmed in the written Entry and Acceptance of Plea that he had read, understood, and agreed with the factual basis.  He affirmed this response during the sentencing hearing, where the Court found there was a factual basis for his guilty plea.  Had counsel sought to explain or limit Petitioner's involvement in the offense, counsel would have risked the Court rejecting the guilty plea and losing the reduction Petitioner received for acceptance of responsibility.  Finally, Petitioner cannot show prejudice because he has not shown that the factual basis was deficient.  This claim will also be dismissed.

Fourth, Petitioner has not shown deficient performance or prejudice relative to counsel's advice regarding a justification defense.  Petitioner claims that his attorney incorrectly advised him that self-defense is not a justification to a felon-in-possession offense.  A defendant may raise a justification defense on a felon-in-possession charge only in very limited circumstances.  United States v. Mooney, 497 F.3d 397, 404 (2007).  A defendant must show: (1) that he "was under unlawful and present threat of death or serious bodily injury;" (2) he "did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;" (3) there "was no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm);" and (4) there is "a direct causal relationship between the criminal action and the avoidance of the threatened harm." United States v. Crittendon, 883 F.3d 326, 330 (4th Cir. 1989)).  Accordingly, self-defense, itself, is not sufficient to support a justification defense.  Moreover, Petitioner's

16

actions were not consistent with self-defense anyways. At sentencing, Petitioner's attorney stated, "he got a gun to defend himself," but "[t]hat didn't excuse him under the law." This reflects counsel's understanding that Petitioner's actions did not establish a legal defense to a felon-in-possession charge. Even if counsel's advice had been deficient, Petitioner cannot and has not shown prejudice. Petitioner's actions in leaving the men who allegedly threatened him, retrieving the firearm from inside his girlfriend's house, going back outside to the scene of the alleged threat, and firing the firearm do not meet any of the justification defense elements. See Crittendon, 883 F.3d at 330; see Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996) (holding if there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate such a defense is not prejudicial"). This claim will also be dismissed.

Petitioner, therefore, has also failed to establish that his plea was not knowingly and voluntarily made.

In sum, because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claims will be dismissed. See Strickland, 466 U.S. at 687-88.

### D. Petitioner's Other Motions

The Court will grant Petitioner's motions to amend insofar as the Court's has reviewed them and the exhibits submitted therewith, as reflected in this Order, and finds that nothing therein changes the outcome of these proceedings.

The Court will deny Petitioner's motions for documents, motion to compel discovery, and motion for transcripts.[11] [CV Docs. 2, 3, 9, 14]. In his motion for transcripts, Plaintiff vaguely requests his "transcripts," then goes on to argue that he is entitled "to the information contained in

---

[11] In Petitioner's motion for transcripts, he requests "access to the information contained in the report of investigation and the firearm trace summary in [his] case," not transcripts. [Doc. 9 at 1]. The Court will, therefore, treat it as a motion for discovery.

the report of investigation and the firearm trace summary." [Id. at 1]. Petitioner states he was previously denied his transcripts on October 31, 2019, and he needs them now "to prove issues that are asserted in [his] 2255." [Id. at 2].

"A habeas petitioner … is not entitled to discovery as a matter of ordinary course," but rather, is entitled to discovery only "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief.'" Bracy v. Gramley, 520 U.S. 899, 904, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). Good cause does not exist where a petitioner requests discovery on a claim that fails as a matter of law. Thomas v. Taylor, 170 F.3d 466, 474 (4th Cir. 1999).

Petitioner here is not entitled to discovery. He sought discovery to establish that the firearm he possessed was manufactured in North Carolina. The record shows and the Government concedes this fact. The record, nonetheless, shows that regardless of the firearm's place of origin Petitioner received it after it had been transported in interstate commerce. As such, Petitioner is unable to demonstrate that he is entitled to relief even with "fully developed" facts. See Bracy, 520 U.S. at 904. The relevant evidence is in the record before the Court now and the record conclusively shows that Petitioner is not entitled to relief. The Court will, therefore, deny Petitioner's motions for documents, discovery, and transcripts.

The Court will also deny Petitioner's motion for an evidentiary hearing, [CV Doc. 12; CV Doc. 1 at 22], and request for appointment of counsel, [CV Doc. 1 at 22]. A § 2255 petitioner's claims may be dismissed without an evidentiary hearing where the parties' submissions conclusively show that the petitioner is not entitled to relief. See Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970) (it is within the district court's discretion to deny a motion to vacate

18

without an evidentiary hearing where the allegations are conclusory or palpably incredible). "Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other grounds by Gray v. Netherland, 518 U.S. 152 (1996). Petitioner argues an evidentiary hearing is necessary to determine defense counsel's credibility because counsel "falsely claims to have 'shown' [Petitioner] the Report of Investigation" and the firearm trace summary, even though no firearm trace summary exists. [CV Doc. 12 at 4]. The record, however, shows no such assertion by Petitioner's counsel. Moreover, even if this claim were true, Petitioner cannot show prejudice because the firearm he possessed met the interstate nexus requirement. The parties' submissions show conclusively that Petitioner is not entitled to relief. No evidentiary hearing is warranted or needed.

In Section 2255 actions, appointment of counsel is governed by the Rules Governing § 2255 Proceedings, Rules 6(a) and 8(c), which mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. Id. Moreover, there is no constitutional right to the appointment of counsel in a § 2255 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). The Court may appoint counsel to a financially eligible habeas petitioner if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B). Petitioner has not shown that appointment of counsel is appropriate in this case. As such, the Court will deny Petitioner's motion for counsel.

To the extent the Court has not specifically addressed any of Petitioner's claims or requests for relief, they are also denied. The Court has reviewed and considered Petitioner's numerous filings and claims for relief and has found no grounds for the relief he seeks.

19

Case 3:20-cv-00009-MOC   Document 21   Filed 10/29/21   Page 19 of 20

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. Petitioner's motions [Docs. 2, 3, 9, 12, and 14] are **DENIED**.

3. Petitioner's motions [Docs. 10, 13] are **GRANTED** in accordance with the terms of this Order.

4. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 28, 2021



Max O. Cogburn Jr.
United States District Judge